**MALLONEE et al. v. FAHEY et al.**

**HOME INV. CO. OF LONG BEACH v. MALLONEE et al.**

**LONG BEACH FEDERAL SAVINGS & LOAN ASS'N v. FEDERAL HOME LOAN BANK et al.**

**WALLIS v. FAHEY et al.**

**TITLE SERVICE CO. v. FAHEY.**

No. 5421.

District Court, S. D. California, C. D.

Sept. 5, 1946.

Westover & Smith and Wyckoff Westover, all of Los Angeles, Cal., for plaintiffs.

Thomas & Wallace and H. O. Wallace, all of Long Beach, Cal., for Title Service Co.

Raymond Tremaine, of Los Angeles, Cal., for R. H. Wallis.

Charles K. Chapman, of Long Beach, Cal., for Long Beach Federal Savings and Loan Association.

James M. Carter, U. S. Atty., and Ronald Walker, Asst. U. S. Atty., both of Los Angeles, Cal., for A. V. Ammann and John H. Fahey et al.

Before ORR, Circuit Judge, and HALL and LING, District Judges.

ORR, Circuit Judge.

The Long Beach Federal Savings and Loan Association was organized in 1934 under the Federal Home Loan Bank Act, as amended 12 U.S.C.A. § 1421 et seq. At the time of its incorporation its assets had a value of approximately $7,500. It has had the same president and board of directors during the ensuing years under whose management and guidance the institution has expanded to a point where, at the time of the seizure hereinafter referred to, its assets were of a value of approximately $26,000,000. It was at the time of seizure entirely solvent, with assets, in addition to an amount sufficient to pay its obligations, in the form of reserves and undivided profits in the sum of $1,300,000.

On May 20, 1946, A. V. Ammann, by virtue of his appointment as a conservator for said institution by John H. Fahey, Administrator, took charge of said institution, and has since been in possession thereof. The conservator took over the Long Beach Federal Savings and Loan Association without notice or hearing of any kind. Subsequent to the taking possession of the bank an administrative hearing was ordered.

Plaintiffs are shareholders in the Long Beach Federal Savings and Loan Association. Several petitions in intervention and third party claims have been filed. All but one of them have joined in the motions of the original plaintiff for injunction.

Temporary orders were issued restraining the merger of the institution with other institutions of like character and restraining the commissioner from holding an administrative hearing.

At the request of certain of the parties a three-judge court was convened under authority of § 266(a) of the Judicial Code, 28 U.S.C.A. § 380(a).

Defendant Ammann has challenged the jurisdiction of the three-judge court to hear and determine the application for the restraining orders on the ground that the provisions of § 380(a) have no application to the law and the facts as presented by said applications. Defendant Ammann's position is: That the instant proceeding seeks to restrain the operation of rules and regulations promulgated by the Board rather than the enforcement, operation or execution of or setting aside in whole or in part of an act of Congress on the ground that the law itself is unconstitutional.

We think the contention is without merit.

Authority to do the acts sought to be restrained, if found to exist, must be bottomed on subsection (d) of § 5[1] of the Home Owners' Loan Act as amended. It is on the direct operation of this statute that the commissioner must rely.

Threatened action under the authority of the statute is sought to be restrained on the ground that the statute is unconstitutional and void in that it attempts to confer legislative power on the board. Clearly this proceeding comes within the provisions of §§ 380 (a) and the question is required to be heard by a three-judge court.

Plaintiffs concentrate their attack on subsections (a) and (d) of § 5 of the Act. It is argued that subsection (d), in attempt-

---

1 12 U.S.C.A. § 1464(d): "(d) The Board shall have full power to provide in the rules and regulations herein authorized for the reorganization, consolidation, merger, or liquidation of such associations, including the power to appoint a conservator or a receiver to take charge of the affairs of any such association, and to require an equitable readjustment of the capital structure of the same; and to release any such association from such control and permit its further operation."

ing to authorize the board to make rules and regulations for the purposes mentioned in said subsection (d) delegates legislative power to the board without prescribing either adequate, or any statement of policy, standards, limitations or criteria to guide the board in exercising its functions and is contrary to Article I, Section 1, and Article I, Section 8, paragraph 18, of the Constitution of the United States. U.S.C.A. Constitution, Article I, Sec. 8, Clause 18.

■■ It is agreed that functions of the Legislature may not be delegated by the Congress to any executive or executive department, hence, there is posed a single question for determination, to-wit: Has the Congress made such a delegation in the sections of the Act under consideration? Fortunately the course to be followed in determining questions of this character has been well charted by the Supreme Court of the United States. We have but to endeavor to make the proper application of the principles by said court enunciated to the conditions existing in the matter before us. We refer particularly to Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and Schechter Poultry Corp. v. U.S., 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. We look to the statute to see whether the Congress has declared a policy with respect to the providing of rules and regulations for the reorganization, consolidation, merger, or liquidation of federal savings and loan associations, including the power to appoint a conservator or receiver to take charge of the affairs of any such association, and to require an equitable readjustment of the capital stock of the same; and to release any such association from such control and permit its further operation;—"Whether the Congress has set up a standard for the President's (board's) action; whether the Congress has required any finding by the president (board) in the exercise of the authority" to do the things enumerated in Sec. 5(d) of the Act. Panama Refining Co. v. Ryan, supra, 293 U.S. p. 415, 55

S.Ct. 246. It may be said of Sec. 5(d), as was said of the section involved in the Panama case, that it is "brief and unambiguous". It makes no attempt to lay down rules for the guidance of the board, nor does it state in what circumstances or under what conditions the board is to merge institutions or appoint a conservator or receiver. It establishes no criterion to govern the board's course. It does not require any finding by the board as a condition of its action. No policy is declared by Congress as to merger, or appointment of conservator. The section gives to the Board unlimited authority to formulate rules for the board's action in the respects mentioned and to do so as it may see fit. The only restrictions on those powers were to be such as the board might choose to put upon itself in the rules and regulations which it, the board, adopted to govern itself. We are unable to find in the Act a declaration of policy or standard of action which can be deemed to relate to the subject of section 5(d).

■ The Los Angeles Bank, with assets of $43,000,000 was merged with a Portland bank and later both with a bank in San Francisco. While the legality of this merger is not before us we consider it because the aim of a statute may be learned "both from its terms and from the administrative practice under it." Schechter Poultry Corp. v. U.S., supra [295 U.S. 495, 55 S.Ct. 853]. The merger was made without notice or hearing of any character. In fact, none is required by the statute and herein lies a fatal defect as to its constitutionality.[2]

■ We think due process requires a hearing on notice and this should be provided within the Act itself.

Comparison of the Home Owners' Loan Act of 1933, as amended, under consideration here, with other acts of Congress which have been held unconstitutional because of improper delegation of legislative power, demonstrates that said Home Owners' Loan Act fails to set up as com-

[2] Ohio Valley Water Co. v. Borough of Ben Avon, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908; Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027; Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215. See also, Boeing Air Transport v. Farley, 64 App. D.C. 162, 75 F.2d 765.

prehensive and definite statements of policy, standards, guides, criteria and limitations as do those acts.[3]

We hold Sec. 5(d) of Home Owners' Loan Act of 1933, as amended, unconstitutional and void as attempting to delegate legislative power to the Federal Home Loan Bank Board created under the Federal Home Loan Bank Act.

Let judgment be entered in accordance with this opinion.

[3] National Industrial Recovery Act; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Schechter Poultry Corp. v. U. S., 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Bituminous Coal Conservation Act of 1935; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. See also, Ohio Valley Water Co. v. Borough of Ben Avon, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908.